UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| MICHAEL MALONE, on behalf of himself and others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> ING NORTH AMERICA INSURANCE CORPORATION, ING USA ANNUITY AND LIFE INSURANCE COMPANY, and DIRECTED SERVICES, LLC (DSL), <br><br> *Defendants*. | CASE NO: <br><br> COMPLAINT-CLASS ACTION <br> JURY TRIAL |

## CLASS ACTION COMPLAINT

Plaintiff, MICHAEL MALONE, on behalf of himself and others similarly situated, by and through his undersigned counsel, brings this Class Action Complaint against Defendants, ING NORTH AMERICA INSURANCE CORPORATION, ING USA ANNUITY AND LIFE INSURANCE COMPANY and DIRECTED SERVICES LLC (collectively "Defendants" or "ING"), and in support thereof, alleges:

### NATURE OF THE CASE

1.  Plaintiff brings this class action on behalf of all United States Citizens whose ING GoldenSelect ES II annuity contracts were breached by Defendants' failure to honor the annuity contracts after receiving initial premium payments from and thereby entering into contracts with annuitants. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure to recover monetary relief, including damages and attorneys' fees.

## PARTIES

2. Plaintiff is an individual currently residing at 17638 Date Palm Ct., N. Ft. Myers, FL 33917, who entered into a contract with Defendants for ING GoldenSelect ES II, an individual deferred combination variable and fixed annuity.

3. Defendant, ING USA Annuity and Life Insurance Company ("ING USA"), is incorporated in Iowa, with its principal place of business at 909 Locust Street, Des Moines, Iowa 50309. ING USA is a member of the ING family of companies and issues variable annuities, including ING GoldenSelect ES II, in the United States.

4. Defendant, ING North America Insurance Corporation, is incorporated in Delaware, with its principal place of business at 5780 Powers Perry NW, Atlanta, Georgia 30327. ING North America Insurance Corporation is a member of the ING family of companies and offers insurance, securities and related financial products and services in the United States.

5. Defendant, Directed Services LLC, is incorporated in Delaware with its principal place of business at 5780 Powers Perry NW, Atlanta, Georgia 30327. Directed Services LLC is a member of the ING family of companies and is the principal underwriter of the variable insurance products issued by ING USA, including ING GoldenSelect ES II, and is a distributor of ING registered annuities.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) in that there is complete diversity of the parties and the amount in controversy exceeds $75,000.00, exclusive of interests and costs. In addition, this Court has further jurisdiction over the parties and the subject matter of this class action pursuant to 28 U.S.C. §

1332(d) because (a) there is diversity of citizenship between at least one member of the class and Defendant, and (b) the amount in controversy exceeds $5 million, exclusive of interest and costs.

6. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391, because Plaintiff resides in this Judicial District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this Judicial District. In addition, Defendants do business and/or transact business in this Judicial District and, therefore, are subject to personal jurisdiction in this Judicial District and reside here for venue purposes.

## SUMMARY OF FACTS COMMON TO ALL CLAIMS

**ING Variable Annuities**

7. Variable annuities are long-term investments designed for retirement planning. They are contractual agreements between a consumer and an insurance company, under which the insurer agrees to make periodic payments to the consumer in exchange for the payment of premiums. Optional benefits and riders are available for an additional cost to the consumer.

8. Variable annuities offer the opportunity to allocate premiums among fixed and variable investment options that have the potential to grow income tax-deferred until an income stream begins. Annuity income, which is distributed either immediately or at a future date, is paid by the issuing insurance company for a specified period of time or for the life of the annuitant.

9. Variable insurance products are typically subject to investment risk, are not guaranteed and will fluctuate in value. However, as discussed in further detail below, ING GoldenSelect ES II, a group and individual deferred combination variable and fixed annuity contract, was offered for sale with optional living benefit riders, all of which included minimum guaranteed income or withdrawal benefits, thereby minimizing the consumer's investment risk.

3

10. ING annuities, including GoldenSelect products, are issued by Defendant, ING USA Annuity and Life Insurance Company ("ING USA"), and distributed by Defendant, Directed Services LLC.

**ING GoldenSelect ES II**

11. ING GoldenSelect ES II is a group and individual deferred combination variable and fixed annuity contract (the "Contract") offered for sale by Defendant, ING USA.

12. ING advertised and offered GoldenSelect ES II for sale to the general public, including through its website.

13. Upon information and belief, ING sold GoldenSelect ES II products throughout the state of Florida and the United States.

14. ING GoldenSelect products are sold by prospectus only, through affiliated and unaffiliated brokers/dealers who sell the contracts through their registered representatives who are licensed to sell securities and variable insurance products.

15. Upon information and belief, pursuant to the terms of the ING GoldenSelect ES II Annuity Contract, the contract becomes effective on the date in which the initial premium is received and upon which ING begins determining contract values ("effective date"). In addition, if an optional rider benefit is purchased at the same time the annuity is initially purchased, the effective date for the rider is the same as the effective date for the annuity contract. If a properly completed application is not submitted within five days of the initial premium payment or, in states where no application is required, a Contract Acknowledgment and Delivery Statement is not executed, ING may rescind the contract. Otherwise, the contract remains in force, subject only to a "free look" period during which the annuitant may cancel the contract and receive a refund of the contract value or premium paid.

**ING Optional Living Benefits (Riders)**

16. The Contract included three optional living benefit riders: the Minimum Guaranteed Income Benefit ("MGIB") rider, the ING Lifepay Plus Minimum Guaranteed Withdrawal Benefit rider ("ING Lifepay Plus") and the ING Joint LifePay Plus Minimum Guaranteed Withdrawal Benefit rider ("ING Joint Lifepay Plus). Each rider included minimum guaranteed income or withdrawal benefits that were intended to be available to the annuitant while the Contract was in the accumulation phase.

17. The MGIB rider was offered as an optional benefit that guaranteed a minimum amount of annuity income would be available if the consumer annuitized on the MGIB Date, regardless of fluctuating market conditions.

18. Prior to January 12, 2009, the ING LifePay Plus rider provided that ING would guarantee a minimum level of annual withdrawals from the Contract for the lifetime of the annuitant, even if the withdrawals depleted the Contract value to zero. ING LifePay Plus riders included a minimum guaranteed withdrawal benefit called the "7% Compounding Step-Up," which ING advertised as providing income protection in down or flat markets. The Compounding Step-Up guaranteed the withdrawal base would never grow less than 7% for each of the first 10 contract years of the contract in which no withdrawal was taken.

19. Under the terms of ING LifePay Plus, the initial guaranteed withdrawal base equaled all premiums paid before the first withdrawal. ING LifePay Plus also includes a Quarterly Ratchet in which the guaranteed withdrawal base increases each quarter if the current contract value is higher than the current guaranteed withdrawal base. On the contract anniversary of any year the annuitant does not take a withdrawal, ING USA looks back to the guaranteed withdrawal base on the previous contract anniversary and increases it by 6 or 7%. If that amount

5

is greater than the highest quarterly ratchet, then that value becomes the new guaranteed withdrawal base. This is called the 7% Compounding Step-Up.

20. By combining the 7% Compounding Step-Up and the Quarterly Ratchet, the annuitant's Guaranteed Withdrawal Base would never grow less than 7% annually with no limit on what can be captured quarterly. Even in a declining market, the Guaranteed Withdrawal Base increases with the 7% Compounding Step-Up.

21. ING LifePay Plus riders purchased subsequent to January 12, 2009 were eligible for a 6% Compounding Step-Up and an Annual Ratchet.

22. The ING Joint LifePay Plus rider provided that ING would guarantee lifetime income for the annuitant and their spouse, which ING advertised as offering protection for married contract owners who wanted to ensure their spouse could continue withdrawals even after the contract owner's death.

23. Like ING LifePay Plus, ING Joint LifePay Plus also provided a Minimum Withdrawal Benefit guaranteeing a minimum level of annual withdrawals from the Contract for the lifetime of both the consumer and their spouse, even if the withdrawals depleted the contract value to zero.

24. As with ING LifePay Plus, ING Joint LifePay Plus also offered the Compounding Step-Up and Ratchet features.

25. Upon information and belief, subsequent to advertising the ING GoldenSelect ES II Contract available for purchase by the general public, and subsequent to Plaintiff's purchase of his Annuity Contract, for unknown reasons, ING decided to discontinue sales of ING GoldenSelect ES II Annuity products.

26. In addition to discontinuing the sale of ING GoldenSelect ES II Annuity products, ING unilaterally ceased honoring its ING GoldenSelect ES II contracts and rescinded same with annuitants who were previous purchasers of ING GoldenSelect ES II Annuities, including Plaintiff.

## NAMED PLAINTIFF'S FACTUAL ALLEGATIONS

27. In March 2009, Plaintiff completed an application for an ING GoldenSelect ES II Deferred Combination Variable and Fixed Annuity Contract and elected the Joint LifePay Plus Rider Minimum Guaranteed Withdrawal Benefit ("ING Annuity"). In his application, Plaintiff indicated his decision to fund his ING Annuity by liquidating his previously existing Nationwide Life and Annuity Policy and transferring those funds to ING in the approximate amount of $346,661.00 as a single premium payment through a Section 1035 Exchange.

28. Subsequent to the completion of his application, Plaintiff's broker, Oppenheimer & Co., Inc., submitted Plaintiff's 1035 exchange to ING.

29. Upon information and belief, ING received Plaintiff's premium payment no later than five days after Plaintiff's single premium payment.

30. ING received Plaintiff's premium payment and thereby entered into a contract with Plaintiff for the ING GoldenSelect ES II Annuity.

31. Upon information and belief, ING issued a policy number for Plaintiff's ING GoldenSelect ES II Annuity.

32. Plaintiff never received a copy of his ING Annuity Contract from ING, but a copy of same is in the possession of the Defendant.

33. On or around April 28, 2009, for unknown reasons, ING USA Annuity and Life Insurance Company unilaterally issued a check to Nationwide Life in the amount of

$349,895.89, representing a return of Plaintiff's premium payment or contract value, thereby rescinding Plaintiff's Annuity Contract.

34. Nationwide accepted the check from ING and reissued an annuity policy to Plaintiff, albeit at a lower guaranteed minimum withdrawal rate than the ING Annuity.

35. As a result of ING's rescission and refusal to honor Plaintiff's ING GoldenSelect ES II Annuity Contract, Plaintiff has suffered damages.

## CLASS ALLEGATIONS

36. Plaintiff brings this action as a class action on behalf of himself and all others similarly situated for the purpose of asserting claims alleged in this complaint on a common basis.

37. Plaintiff proposes to act as a representative of the following proposed class, as defined under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) includes, composed of:

> **All persons in the United States for whom ING refused to honor an ING GoldenSelect ES II Annuity Contract after receiving an initial premium payment and thereby entering into an Annuity Contract.**
>
> Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the proposed Class are the defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by the defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with the defendant and/or its officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

38. In addition to, or in the alternative to, the above, Plaintiff may propose subclasses so as to ameliorate any choice of law concerns or as required by Federal Rule of Civil Procedure 23 by proposing subclasses based upon the fifty states and the Commonwealth of Puerto Rico and the District of Columbia.

8

39. While Plaintiff and the proposed class may seek subclasses as set forth above, this will be the subject of an appropriate Rule 23 class certification motion. Until such time, Plaintiff and the proposed class alternatively propose an initial subclass defined as:

**All Florida Citizens for whom ING refused to honor an ING GoldenSelect ES II Annuity Contract after receiving an initial premium payment and thereby entering into an Annuity Contract.**

> Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the proposed Class are the defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by the defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with the defendant and/or its officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

40. This action is properly brought as a class action under Rule 23 for the following reasons:

   a. The proposed Class consists of thousands of persons so numerous that joinder of all Class Members is impracticable;

   b. There are questions of law and fact common to all members of the Class, which questions predominate over any question affecting only individual Class Members. These include, but are not limited to, the following questions of law and fact:

   1) Whether, upon receipt of an annuitant's initial premium payment, ING entered into a contract with the annuitant for purchase of the ING GoldenSelect ES II Annuity Contract.

   2) Whether, upon receipt of an annuitant's initial premium payment, ING routinely failed to issue ING GoldenSelect ES II Annuity Contracts to annuitants;

9

    3)    Whether ING routinely rescinded ING GoldenSelect ES II Annuity Contracts subsequent to its receipt of initial premium payments and completed Applications or Contract Acknowledgment and Delivery Statements;

    4)    Whether ING routinely refused to honor optional living benefits riders elected by annuitants in connection with their purchase of ING GoldenSelect ES II Annuity Contracts; and

    5)    Whether Class Members are entitled to monetary relief, including damages, and the proper measure of that relief.

c.    Defendant has acted or refused to act on grounds generally applicable to the Class.

d.    The claims asserted by Plaintiff are typical of the claims of the members of the Class.

e.    Plaintiff will fairly and adequately protect the interests of the Class, and Plaintiff has retained as counsel attorneys that are experienced in class action and complex litigation.

f.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

    1)    When the liability of Defendants has been adjudicated, claims of all members of the Class can be determined by the Court;

    2)    This action will cause an orderly an expeditious administration of the Class claims, and economies of time, effort and expense will be fostered and uniformity of decisions will be insured;

3) Other available means of adjudicating the claims of Plaintiff and members of the Class – such as thousands of individual actions brought separately and pursued independently in courts across the country – are impracticable and inefficient;

4) Without a class action, the Class Members will continue to suffer damages and Defendants' violations of law will proceed without remedy while it continues to retain and reap the proceeds of its wrongful conduct; and

5) This action presents no difficulties that would preclude management by the Court as a class action.

## COUNT I
## (BREACH OF CONTRACT)

Plaintiff, Michael Malone, individually and on behalf of all others similarly situated, states as follows:

41. Plaintiff incorporates paragraphs 1 through 41 by reference, as though fully set forth herein.

42. Upon receiving Plaintiff's and Class Members' initial premium payments, ING entered into a contract for Plaintiff's and Class Members' purchase of ING GoldenSelect ES II Annuity Contracts.

43. Plaintiff's and Class Members' ING GoldenSelect ES II Annuity Contracts became effective on the date in which their initial premium payments were received by ING.

44. Plaintiff's and Class Members' Annuity Contracts included optional living benefits riders, which guaranteed Plaintiff and Class Members a minimum guaranteed income or withdrawal benefit.

11

45. Defendants breached Plaintiff's and Class Members' Annuity Contracts by unilaterally rescinding or failing to honor the Annuity Contracts, including the optional living benefit riders.

46. As a result of Defendants' breach of contract, Plaintiff and Class Members have suffered damages to be determined according to proof at the time of trial.

## COUNT II
## (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

47. Plaintiff incorporates paragraphs 1 through 41 by reference, as though fully set forth herein.

48. The contract between Plaintiff and Class Members and the Defendants included an implied covenant of good faith and fair dealing.

49. Defendants, through a conscious and deliberate act, breached this implied covenant in the Contract when they unilaterally rescinded or failed to honor the Annuity Contracts, including the optional living benefits riders, subsequent to receiving initial premium payments from Plaintiff and Class Members.

50. Defendants' breach unfairly deprived Plaintiff and Class Members of the benefit of the Contracts.

51. As a result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff and Class Members suffered damages to be determined according to proof at the time of trial.

## RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants for himself and the members of the Class as follows:

A. Certifying the Class as requested herein;

B. Awarding plaintiffs and the proposed members of the Class damages;

C. Awarding attorneys' fees and costs; and

D. Providing such further relief as may be just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: January 31st, 2011

Respectfully submitted,

By: _____
**J. ANDREW MEYER, ESQUIRE**
Florida Bar No. 0056766
TAMRA GIVENS, ESQUIRE
Florida Bar No. 657638
RACHEL SOFFIN, ESQUIRE
Florida Bar No. 0018054
MORGAN & MORGAN, P.A.
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402
Email: ameyer@forthepeople.com
       tgivens@forthepeople.com
       rsoffin@forthepeople.com

**SCOTT WM WEINSTEIN, ESQUIRE**
Florida Bar No. 563080
MORGAN & MORGAN, P.A.
12800 University Drive, Suite 600
Fort Myers, FL 33907-5337
Telephone: (239) 433-6880
Facsimile: (239) 433-6836
Email: sweinstein@forthepeople.com